# COUNTY COMMISSIONERS OF ALLEGANY COUNTY

*vs.*

## STATE LUNACY COMMISSION.

*Insane: care of—; Allegany County.   State's liability: statutes;*
*interpretation; Chapter 778 of Acts of 1914.*

In the interpretation of statutes, courts must endeavor to ascertain the intention of the Legislature, and this intention may be gathered not merely from the language of its enactments, but also from the causes which occasioned their passage, and from the surrounding circumstances existing at the time.

p. 162

The amount of the State's liability, under Chapter 778 of the Acts of 1914, for the support of dependent insane at Sylvan Retreat is the *deficiency* between the amount paid by Allegany County and other counties of Maryland, and the actual cost of supporting and maintaining such persons.                p. 165

The State's liability is not limited by the Act only to the deficiency arising from the care of dependent insane sent there by other counties than Allegany County.                p. 165

*Decided December 4th, 1915.*

Appeal from the Superior Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alfred S. Niles* (with whom was *Walter C. Capper* on the brief), for the appellant.

*Edgar Allan Poe, the Attorney-General,* submitted the cause on brief for the appellee.

BURKE, J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court of Baltimore City passed on the 13th day of August, 1915, dismissing a petition for mandamus filed by the appellant against Arthur P. Herring, the Secretary of the Lunacy Commission of the State of Maryland. The object of the petition was to require the defendant to approve the statement submitted to him and exhibited with the bill. This statement will be presently referred to. The defendant demurred to the petition. At the hearing of the demurrer it was admitted by the defendant, as stated in the record, "that all the facts stated in the petition are true subject to their legal relevancy, and agreement in open Court that the demurrer together with said admission shall be treated as an answer if required." The Court sustained the demurrer, and, treating it as an answer under the agreement, dismissed the petition, and from this action the petitioner has appealed.

Whether the State is liable, under the Act of 1914, Chapter 778, to the petitioner for the sum of $5,223.18 for the support and maintenance of dependent insane persons of the State of Maryland for the year 1914 treated at Sylvan Retreat in Allegany County as shown in the statement referred to, is the sole question presented by this appeal. The question is a narrow one,—its determination depending upon the proper interpretation of the statute. No constitutional question is involved,—the single question being whether the State by the Act mentioned has imposed this liability upon itself. If it intended to do so, there is no reason why the writ of mandamus should not have issued as prayed. In the construction of the Act the Court must endeavor to ascertain the intention of the Legislature, and this intention may be gathered not merely from the language of the enactment, but also from the causes which prompted its passage and from surrounding circumstances existing at the time, or, as was said in *C. & O. Canal Co.* v. *B. & O. R. R. Co.,* 4 Gill & Johnson, 152: "Statutes should be construed with a view to the original intent and meaning of the makers, and

such construction should be put upon them as best to answer that intention which may be gathered from the cause or necessity of making the Act, or from foreign circumstances, and when discovered ought to be followed, although such construction may seem to be contrary to the letter of the statute."

The Act under consideration will be examined in the light of these principles. It is entitled: "An Act to appropriate certain sums of money to the County Commissioners of Allegany County, Maryland, for the support and maintenance at Sylvan Retreat of dependent insane persons of Maryland, to meet the difference between the amount paid by the counties of Maryland and the actual cost of supporting and maintaining such persons at said Asylum." The first section imposes the duty upon County Commissioners to keep minute and accurate account of all monies received and disbursed for the support and maintenance of dependent insane persons of Maryland in their charge at Sylvan Retreat, and at the end of the years 1914 and 1915 shall prepare a complete statement thereof, "which shall be submitted to the Secretary of the Lunacy Commission, and upon his aproval of the same and it shall appear that there is a deficiency between the amount paid by Allegany County and other counties of Maryland and the actual cost of supporting and maintaining such persons, the said deficiency shall be reimbursed by the State." The sum of $10,000 or so much thereof as might be necessary is appropriated by section 2 of the Act "to the County Commissioners of Allegany County to pay for any and all deficiencies arising from the support and maintenance of dependent insane persons of Maryland, approved and ascertained as provided in the above section for the year 1914, and a like sum of $10,000 for the year 1915, or so much thereof as may be necessary, and the Comptroller of the Treasury be and he is hereby authorized and directed to issue his warrant upon the Treasurer for such amounts, and payable to the said Commissioners upon the production of the required approval and certification of the correctness of the account."

The account verified, by affidavit, for all monies received and disbursed by the County Commissioners of Allegany County for the support and maintenance of dependent insane persons of Maryland, from January 1st, 1914, to January 1st, 1915, was presented to the defendant, and upon the advice of the Attorney-General and in which he concurred, he refused to approve the account. The account complies with the requirements of the Act and no exception is made of it. It shows that the total cost of supporting and maintaining said patients at Sylvan Retreat for the year 1914 was $15,185.3.1 We quote as follows from the account:

"Average daily number of patients at Sylvan Retreat during the year 1914, 84.86; maintained at said institution during said year at a total net cost of $13,710.05, makes an average cost of each patient for said year the sum of.................. 161.56

"Amount paid by Allegany County and other Counties of Maryland to the State for support and maintenance of insane patients. . . ......................... 100.00

"Deficiency per patient suffered by Allegany County ....................... 61.56

"Deficiency based on a daily average attendance at said institution during said year of 84.86 patients, at the sum of $61.56 each, amounts to a total deficiency suffered by Allegany County, and for which it claims reimbursements under Chapter 778 of the Acts of 1914, of..... 5,223.98."

It thus appears that the claim made is for a deficiency of sixty-one dollars and fifty-six cents per patient for the actual cost of supporting and maintaining dependent insane persons of Maryland at Sylvan Retreat,—that the other counties of the State paid $100 per patient for the support and maintenance of insane patients in State hospitals was taken as an essential fact in the ascertainment of this deficiency.

Under the Act of 1910, Chapter 715, p. 185, the amount required to be paid by the counties for the support of such an insane person in State Institutions was $100, and the remaining amount required for the board, care and treatment of such an insane person was payable by the State. It could not be and is not claimed that under the system adopted by the State for the care of its dependent insane by that, and prior acts, this claim could be maintained. But it appears to us that it was the evident intention of the Act of 1914, Chapter 778, to recognize Sylvan Retreat,—a private insane asylum owned and controlled by Allegany County,— as a proper place in which dependent insane persons of Maryland might be confined, for care and treatment, and that a portion of the cost of their support and maintenance should be paid by the State, and for that purpose an appropriation for the years 1914 and 1915. The amount of the State's liability was, as declared by the Act, to be "the *deficiency* between the amount paid by Allegany County and other counties of Maryland and the *actual cost* of supporting and maintaining such persons." This deficiency, by reference to the provisions of the public law and by the account directed by the Act to be submitted to the Secretary of the Lunacy Commission of the State, is readily ascertainable.

This construction gives effect to the intention of the Legislature and it does no injustice to the State, which pays much more *per capita* than is charged in this account. It would be a narrow and unreasonable construction to hold that the only dependent insane for which Allegany County should be paid anything under the Act were those sent from other counties of the State to Sylvan Retreat. It follows from this conclusion that the order from which this appeal was taken must be reversed.

*Order reversed, with costs, and cause remanded.*